C.J. HORNER COMPANY and INDIANA LUMBERMEN'S MUTUAL INSURANCE CO. *v.* Judith Tarvin STRINGFELLOW and William Bryant STRINGFELLOW, Widow and Dependent Son of William B. STRINGFELLOW, Deceased

85-73                                           691 S.W.2d 861

Supreme Court of Arkansas
Opinion delivered July 1, 1985

*Friday, Eldredge & Clark,* by: *Elizabeth J. Robben* and *Kevin A. Crass,* for appellant.

*William F. Magee,* for appellee.

JOHN I. PURTLE, Justice. We accepted this case on certiorari from the Court of Appeals which had affirmed the opinion of the Workers' Compensation Commission. We agree with the Court of Appeals that reasonable minds could conclude that the decedent's work was a precipitating factor which brought about the acute myocardial infarction which occurred while decedent was performing his employment duties.

The decedent was seated at his desk on September 14, 1982, performing his normal duties for his employer when he suffered a fatal heart attack. He simply slumped over on his desk and died without uttering a word. He was taken immediately to the hospital where his doctor pronounced him dead. He had been employed about three years by the appellant employer.

The widow told the doctor that decedent had been working about 61 hours a week at the time but a few months earlier, during the Oaklawn racing season, he had worked about 70 hours a week. Decedent's job was to take orders and oversee deliveries. Much of his work was done by telephone and none of it involved strenuous physical activity.

In February, 1983, the doctor wrote the widow a letter which

stated in part:

> I feel, without reservation, that the long hours, the job pressures of Mr. Stringfellow's employment were contributing factors to his heart attack, and could well have precipitated this event.

The decedent had made no prior complaints about his health but he slept a lot and seemed awfully tired. He did not feel like doing anything but resting when he came home from work. It had been more than two years since he had been examined by a doctor. He smoked about two packs of cigarettes per day and was a member of a musical combo that sometimes played at night clubs and private parties in and around Hot Springs. On the day of his death neither his family nor fellow employees noticed anything unusual about his appearance.

Decedent's family doctor testified by deposition that he had been the family physician since 1975 and had never treated decedent for any cardiac disease. He did not suspect Stringfellow was suffering from heart problems. Based upon his examination of the body and the report of the ambulance attendants he diagnosed the cause of death as acute myocardial infarction. It was the doctor's understanding that decedent was sitting at his desk doing his job when he simply bent forward, placed his head down on his desk, and died. The doctor felt that the decedent was working under stress. One question and answer was on the matter of stress on decedent's job and is as follows:

> Q. You do not know with any degree of medical certainty that they were contributing factors?

> A. As well as any physician can be medically certain that stress produces conditions which are conducive to having a heart attack. If a man was laboring under stress, then this would be a contributing factor, and I have to stand with my statement—that I feel this could very well be a contributing factor to this gentleman's death.

It is fair to say that certain statements of the doctor were favorable to either side but on the whole his testimony was that the stress of decedent's job was a contributing factor to his death.

■ Heart cases are among the most difficult in Workers' Compensation law. This is so because heart attacks often come in unusual situations and even while one is asleep. Often there is no apparent reason for heart attacks. We stated the rule in such cases in *Latimer* v. *Sevier County Farmers' Cooperative, Inc.*, 233 Ark. 762, 346 S.W.2d 673 (1961) as follows:

> [A]n accidental injury arises out of the employment when the required exertion producing the injury is too great for the person undertaking the work, whatever the degree of exertion or the condition of his health, provided the exertion is either the sole or a contributing cause of the injury. In short, an injury is accidental when either the cause or the result is unexpected or accidental, although the work being done is usual or ordinary.

■ We reached the same conclusion in another heart case reported as *Hoerner Waldorf Corp.* v. *Alford*, 255 Ark. 431, 500 S.W.2d 758 (1973). In the case of *Asphalt Materials Co.* v. *Coleman*, 243 Ark. 646, 420 S.W.2d 921 (1967), we reviewed the question of causal connection between work and heart attack and stated:

> In resolving the issue before us, we are mindful of those cardinal principles so well established as to need no citation of authority:
>
> (1)  the compensation act is to be construed liberally in favor of the workman;
>
> (2)  the burden is on the claimant to show causal connection between his heart attack and his employment; and
>
> (3)  we give the evidence its strongest probative force in favor of the commission's findings because those conclusions carry the weight of a jury verdict.

■ There was no evidence that the myocardial infarction was caused solely by the decedent's employment but there was substantial evidence that the stress of the employment duties contributed to the infarction. Under the facts of this case we are bound by our decisions in *Hoerner, Latimer, Asphalt Materials Co.* and many others not cited herein. If the employment

precipitates or contributes to an attack there is a causal relation between the injury and the employment. When the Workers' Compensation Commission finds such causation and its decision is supported by substantial evidence, as it is here, we will not reverse such a decision.

Affirmed.

HOLT, C.J., and HICKMAN, J., dissent.

GEORGE ROSE SMITH, J., not participating.

DARRELL HICKMAN, Justice, dissenting. To me this case shows we have a court-created life insurance policy for workers who die of a heart attack on the job—a recovery not intended by the workers' compensation law.

This case is an example of just how far we have come. In some of the earlier "heart attack cases," we required that there have been an extraordinary occurrence or exertion to support an award. *Baker v. Slaughter*, 220 Ark. 325, 248 S.W.2d 106 (1952); *Duke v. Pekin Wood Products Co.*, 223 Ark. 182, 264 S.W.2d 834 (1954). In other cases we would affirm awards by the commission where a heart attack followed only ordinary exertion. *Batesville White Lime v. Bell*, 212 Ark. 23, 205 S.W.2d 31 (1947); *Harding Glass Co. v. Albertson*, 208 Ark. 866, 187 S.W.2d 961 (1945). In *Bryant Stave & Heading Co. v. White*, 227 Ark. 147, 296 S.W.2d 436 (1956), we joined the majority of states and abandoned the unusual and extraordinary stress requirement to adopt the rule that "an injury is accidental when either the cause or result is unexpected or accidental, although the work being done is usual or ordinary."

Such a rule and its implications has its defendants and critics. 1B *Larson's Workmen's Compensation Law* § 38.00 (1982); H. Woods, *The Heart Attack Case in Workmen's Compensation*, 16 Ark. L. Rev. 214 (1961); R. Wright, *Defendant's View of Workmen's Compensation Heart Cases*, 16 Ark. L. Rev. 234 (1961); W. Putman, *The Relationship of Effort or Stress to Coronary Heart Disease*, 17 Ark. L. Rev. 39 (1963).

In this case we have a 52 year old man who smoked two packs of cigarettes daily, participated in a band which played nights, and died at his desk of a heart attack. The cause? Certainly, there

is no substantial evidence that his job caused his death. The majority and a majority of the court of appeals rely on a note from Stringfellow's doctor to Mrs. Stringfellow which concludes that the long hours and job pressures were "contributing factors" to the heart attack. Then on cross-examination the doctor admitted that he had no personal knowledge that Mr. Stringfellow was under any unusual job-related stress just prior to his death and that he did not believe that the job caused the death, only that it *may* have been a contributory factor.

Such evidence is not that which we ordinarily find to be substantial. In *Pickens-Bond Const. Co. et al* v. *Case*, 266 Ark. 323, 584 S.W.2d 21 (1979), a worker's compensation case, we reiterated the definition of substantial evidence:

Substantial evidence has been defined as 'evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture.' Ford on Evidence, Vol. 4, § 549, page 2760. Substantial evidence has also been defined as 'evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences.'

In relaxing our standard of review, we are sending a message that in heart attack cases, workers' compensation will become a form of life insurance rather than compensation for job related accidents or injuries. That will probably lead to an amendment of the workers' compensation law which could work to the detriment of the workers.

I would deny the claim as being unsupported by any substantial evidence. Furthermore, I would join those who call for a review of the legal standard of causation in such cases. See A. Larson, *The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution*, 65 Mich. L. Rev. 441 (1967).

Holt, C.J., joins in the dissent.